IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

UNITED STATES OF AMERICA                    No. EP:04-CR-2091-KC

v.                                          El Paso, Texas

NOEL CEDRO TOLENTINO                        January 2, 2008

PLEA OF GUILTY

BEFORE THE HONORABLE KATHLEEN CARDONE

UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    William F. Lewis, Jr.
                       J. Brandy Gardes
                       United States Attorney's Office
                       700 East San Antonio, Suite 200
                       El Paso, Texas 79901

For the Defendant:     Ray Velarde
                       1216 Montana Avenue
                       El Paso, Texas 79902

     Proceedings recorded by stenotype.  Transcript produced by
computer-aided transcription.

David A. Perez, CSR, RPR

THE CLERK:  Court is back in session.

THE COURT:  You may be seated.

THE CLERK:  EP:04-CR-2091, USA versus Florita Cedro Tolentino, Noel Cedro Tolentino and Angelica Tolentino.

MS. GARDES:  Good afternoon, Your Honor.  Brandy Gardes and Bill Lewis on behalf of the United States.

MR. ABRAHAM:  Good afternoon, Sib Abraham for Florita Tolentino.

MR. VELARDE:  Good afternoon, Judge Cardone.  Ray Velarde on behalf of Noel Cedro Tolentino.  We're ready for a plea.

MR. ISLAS:  Good afternoon, Judge.  Luis Islas for Angelica Tolentino, who's present.  But I understand if this plea goes through, that the indictment will be dismissed against Angelica.

MS. GARDES:  That is true, conditioned on Ms. Angelica signing an; affidavit of waiver of contesting the forfeiture in the case which has been given to Mr. Islas.

MR. ISLAS:  We have it.

MS. GARDES:  It has to be done in front of a notary. We assume that we will get that one.

THE COURT:  We're ready to proceed?

MR. ABRAHAM:  Yes.

THE COURT:  You are Florita Cedro Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

David A. Perez, CSR, RPR

NOEL CEDRO TOLENTINO

THE COURT:  My understanding is that you are here today to enter a plea to the offense of conspiracy to defraud the United States Government; is that correct?

DEFENDANT FLORITA TOLENTINO:  Yes, Judge.

THE COURT:  And you are Noel Cedro Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino, it's my understanding you are here today to enter a plea to the count of conspiracy to defraud the United States; is that correct?

DEFENDANT NOEL TOLENTINO:  Yes, it is.

THE COURT:  All right.  Swear them in.

(Defendants sworn.)

THE COURT:  I'm going to ask each of you to do a couple of things.  First of all, as we go through the plea, I will be explaining to you a number of things and asking you some questions.  If at any point I say something that you don't understand, that you need me to restate to clarify it for you, please let me know that and I will be happy to explain or clarify anything that you don't understand.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  As we go through the plea, if you have a question about something, something you want to talk over with

your attorney, and you need a moment to discuss something with your attorney, please let me know that, I will be happy to take a short break for either one of you if you want to ask or discuss something with your lawyer.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, Judge.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  And, finally, as we go through the plea, there will be a number of questions I will be asking each of you.  There are no right or wrong answers to those questions.  You have each taken an oath to tell the truth.  I expect each of to you listen to the question and answer the question truthfully as it applies to you.  In other words, just because I'm doing these pleas together, that doesn't mean that you're not two separate individuals and that you might not have two separate answers to a question.  So listen to the question and answer the question truthfully.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  So the first thing is that you don't have to plead guilty here this afternoon.  If you believe you are innocent of these charges, you should not be entering a plea of

guilty.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  If you believe you have a defense to these charges, and you would like to go to trial, you are absolutely entitled to a trial, either a trial before me as the judge, or a jury trial.  And if you would like to go to trial in this case, you should not be entering a plea of guilty.

Do you understand, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  If you walked into the courtroom with the idea of pleading guilty, and for whatever reason you change your mind, you decide you don't want to go through the plea, that's fine with me, if you don't want to plead guilty, you don't have to plead guilty, you should not plead guilty in this case unless that's what you really want to do.

And I'm explaining all of that to you because I want you both to understand that once we go through this plea, once I explain all the rights that you have and the consequences of entering in plea, once you actually enter your plea of guilty and we adjourn to come back another day for sentencing, at that

point it becomes very difficult to withdraw this plea.  So you should not plead guilty unless that's what you really want to do in your case.

Do you both understand that?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  So let me start with you, Ms. Tolentino. Can you please give me your full, true and correct, legal name?

DEFENDANT FLORITA TOLENTINO:  Florita Cedro Tolentino.

THE COURT:  And, Mr. Tolentino, your full, true and correct, legal name?

DEFENDANT NOEL TOLENTINO:  Noel Cedro Tolentino.

THE COURT:  And are each of you here today to enter a plea of guilty freely and voluntarily?

Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Have each of you seen a copy of the second superceding indictment in your case?  And have you had the opportunity to discuss that with your attorney?

Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Are each of you here today to enter a plea of guilty freely and voluntarily?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Do either of you have any complaints about anything your attorney has done or failed to do in representing you in your case?

Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  None, ma'am.

THE COURT:  Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  No, ma'am.

THE COURT:  Ms. Tolentino, are you in good physical health?

DEFENDANT FLORITA TOLENTINO:  In good physical health?

THE COURT:  Yes.

DEFENDANT FLORITA TOLENTINO:  Not perfect.

THE COURT:  All right.  Is there any particular ailment that you suffer from?

DEFENDANT FLORITA TOLENTINO:  A heart problem.

THE COURT:  All right.  Is there a specific diagnosis?

DEFENDANT FLORITA TOLENTINO:  Yes, prolapse of the ventral -- left ventricle part of my heart.

THE COURT:  Do you take any medication for that?

DEFENDANT FLORITA TOLENTINO:  Yes.

THE COURT:  And what kind of medication is that?

DEFENDANT FLORITA TOLENTINO:  I forgot the medicine. I forgot.  I forgot the medicine.  Because they give it to me sometimes.  It is the one that is not -- it's the one from Medicare.  I'm sorry, I forgot.

THE COURT:  Do you take it every day?

DEFENDANT FLORITA TOLENTINO:  Every day, especially when I have palpitations.

THE COURT:  Is there anything about that medication that you think affects your ability to think clearly here today?

DEFENDANT FLORITA TOLENTINO:  No.

THE COURT:  Do you take any other kind of medication?

DEFENDANT FLORITA TOLENTINO:  No, that's --

THE COURT:  Have you ever been treated or hospitalized for any sort of mental problems?

DEFENDANT FLORITA TOLENTINO:  No.

THE COURT:  Have you ever been treated for any kind of an addiction?

DEFENDANT FLORITA TOLENTINO:  No.

THE COURT:  So as you stand here before me, Ms. Tolentino, about ready to enter your plea, are you under the influence of an alcoholic beverage, a narcotic drug, or any medication other than the medication you take for your heart?

DEFENDANT FLORITA TOLENTINO:  No.

THE COURT:  Mr. Tolentino, are you in good physical health?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Have you ever been hospitalized or treated by a doctor for any sort of mental problems?

DEFENDANT NOEL TOLENTINO:  No, ma'am.

THE COURT:  Have you ever been treated for any kind of an addiction?

DEFENDANT NOEL TOLENTINO:  No, ma'am.

THE COURT:  Are you currently taking any kind of medication?

DEFENDANT NOEL TOLENTINO:  Just high blood pressure medicine, lisinopril.

THE COURT:  Is there anything about that medication that you think affects your ability to think clearly here today?

DEFENDANT NOEL TOLENTINO:  No, ma'am.

THE COURT:  So as you stand here before me about ready to enter your plea, are you under the influence of an alcoholic beverage, a narcotic drug, or any medication other than the one you take for high blood pressure?

DEFENDANT NOEL TOLENTINO:  No, I'm not.

THE COURT:  There are plea agreements in each of your cases.  Have each of you had the opportunity to go over that plea agreement and discuss it with your attorneys before you

David A. Perez, CSR, RPR

signed it?

Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Does that agreement contain all of the agreements that you have with the U.S. Attorney's Office?

Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Has anybody made any other or different promise to you to get you to plead guilty here today?

Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  No, ma'am.

THE COURT:  Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  No, ma'am.

THE COURT:  Now, for each of you there are consequences of entering a plea of guilty to a felony offense.

Let me ask you, Ms. Tolentino, are you a citizen of the United States of America?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  Mr. Tolentino, are you a citizen of the United States of America?

DEFENDANT NOEL TOLENTINO:  I am not.

THE COURT:  For you, Ms. Tolentino, as a citizen of the United States a plea of guilty can affect certain, valuable civil rights that you have.  It can affect your right to sit on a jury.  It can affect your right to vote.  It can affect your right to certain Government employment, to certain Government benefits, to certain Government licenses.  It can affect your right to carry a firearm.  All of those kinds of things can be affected by a plea of guilty here today.

Do you understand that?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  For you, Mr. Tolentino, if you are not a citizen of the United States of America, a plea of guilty may result in you being deported, excluded, or denied naturalization under our laws.

Do you understand that?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  For both of you by pleading guilty here today, there are certain legal rights that you give up.  We have talked a little bit about the right that each of you have to have a trial.  You are each absolutely entitled to a trial, either a trial before me, as I said, or a jury trial.  As a matter of fact, we're scheduled to pick that jury this Friday.  By entering a plea of guilty, each of you give up the right to a trial in this case.  There will no trial for either one of you.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  You have the right to remain silent.  That means you have the right to stand here and say absolutely nothing at all regarding this offense.  But by entering a plea of guilty, each of you give up the right to remain silent in your case.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  You have the right to confront witnesses. You have the right to have the witnesses who have made these allegations against you brought into the courtroom.  You have the right to hear their testimony and to have your attorneys cross-examine them about what they allege you did in this case. By entering a plea of guilty, each of you give up the right to hear from those witnesses and to have your attorney cross-examine them.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  And you have the right to the presumption of innocence.  Under our system of justice, as you stand here today, the law presumes that you are innocent of these charges.  But by entering a plea of guilty, you give up the right to that presumption of innocence.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Now, in each of your cases, it is the United States Government who has brought these charges against you.  And, therefore, it becomes their obligation, their burden of proof to prove the case against you, and to prove it beyond a reasonable doubt.  By entering a plea of guilty, you give up the right to require the Government prove its case against you, and that they prove it beyond a reasonable doubt.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  So I want to go over with you right now what it is the Government would have to prove in each of your cases.  Since each of you are pleading to the offense of conspiracy to defraud the United States, the Government would have to prove, essentially, the same thing in each of your

cases.  I will go over it.

In each of your cases the Government would have to prove that you, as the defendant, and at least one other person made an agreement to commit the crime of defrauding the United States as charged in your indictment.  The Government would have to prove that you, as the defendant, knew the unlawful purpose of that agreement and joined in it willfully, that is, with the intend to further the unlawful purpose.

And, the Government would have to prove that one of the conspirators, during the existence of that conspiracy, knowingly committed at least one of the overt acts described in that indictment in order to accomplish some object or purpose of the conspiracy.

Do you understand what the Government would have to prove against you, Ms. Tolentino?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And do you understand what the Government would have to prove against you, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  And do each of you understand that by pleading guilty here today you give up the right to require that the Government prove all of that against you beyond a reasonable doubt?

Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Now, I want to talk to each of you a little about sentencing.  I'm not going to be sentencing either of you here today.  You will be coming back another day for sentencing.  However, before you enter your plea, I want each of you to understand a little bit about sentencing here in federal court.

The first thing I want you both to understand is that the maximum statutory penalty for this offense is up to five years of incarceration, a $250,000 fine, three years supervised release, and a $100 special assessment.

Do each of you understand that?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Now in each of your cases, a probation officer has been assigned.  That probation officer will be preparing a Presentence Investigation Report.  In that report each of you will be placed in what's called a Total Offense Level and a Criminal History Category.

The Total Offense Level is based on the offense that you've entered a plea of guilty to.  In other words, the offense of conspiracy to defraud the United States.  The Criminal History Category is based on your particular criminal history.  Then, at the time of sentencing, using what's called

the sentencing table -- down the side here is the Total Offense Level, and across the top is the Criminal History Category. Using the information provided by the probation department we go down to your Total Offense Level, across to your Criminal History Category. Where those two meet is what's called the guideline range of sentence for each of you in your individual cases.

Do you understand that?

DEFENDANT FLORITA TOLENTINO: Yes, ma'am.

DEFENDANT NOEL TOLENTINO: Yes, ma'am.

THE COURT: Now, I don't have that information in front of me. And I want to mention to both of you at this point that it is my understanding, having read your plea agreement, that there is actually an agreement -- binding sentencing agreement as part of this plea agreement. So -- and it is set forth here that part of the binding agreement is that there will be -- the sentence would include three years probation, no fine or restitution, and forfeiture of any and all interest that you have in properties that have been identified in your indictment.

Do you understand that that's part of the agreement that you have with the Government?

DEFENDANT FLORITA TOLENTINO: Yes, ma'am.

DEFENDANT NOEL TOLENTINO: Yes, ma'am.

THE COURT: And that its a binding agreement, which

means that if I don't follow it, that I will allow you to withdraw your guilty pleas.

Do you both understand that?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

DEFENDANT NOEL TOLENTINO:  Absolutely.

THE COURT:  So what I want to explain to you, however, is that I will still be getting that Presentence Investigation Report.  That report is a report that I use to determine what is a fair and reasonable sentence in your case.

If I were not to follow that plea agreement, then I would allow you to withdraw your plea, however.  So the Court has reviewed that.  At this point I don't know for sure whether I will agree or not agree.  But I want you both to understand should I not agree to that sentencing agreement, then I would allow you to withdraw your plea at that time.

Do you understand that?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

DEFENDANT NOEL TOLENTINO:  Yes, ma'am, I do.

THE COURT:  And that Presentence Investigation Report will be prepared prior to your day of sentencing so that both of you will have the opportunity to review that.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  I also want you to understand that depending on the sentence this Court were to give to you, that there is no such thing as parole in the federal system.  I don't want either of you to enter a plea of guilty here today with the idea that you get to appear in front of a parole board and that somehow a parole board can shorten your term of sentence.  There is no such thing as parole in the federal system.

Do you understand that?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Now there is good-time credit.  And what that means for each of you is should either of you get a sentence greater than 12 months, it can be anything greater than 12 months, even 12 months and a day, but should this Court sentence you to a sentence greater than 12 months, then you become eligible to earn good-time credit while you are incarcerated.  Based on your plea agreement that is not contemplated.  But you both need to understand there is no parole in the federal system.

Do you understand that?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  And should this Court sentence you to a

period of incarceration, once the incarceration was completed, then there would be a term of supervised release.  Supervised release means that although you are no longer incarcerated, you are still under the terms and conditions of this Court.  And you would be under this Court's supervision for a period of years.  As long as you completed these terms and conditions, then, hopefully, you would not be back in this courtroom again. But if you violate a term or condition of your supervised release, you're brought back in front of me, then you could go back to prison for that.  Do you both understand that?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Now since there is a plea agreement in your case, I want each of you to understand by entering into that plea agreement you have limited your rights to appeal. That doesn't mean you can't appeal.  What it means is that you have limited your rights to appeal.  You could still appeal for ineffective assistance of counsel.  You could appeal if there was some sort of prosecutorial misconduct that rose to a Constitutional violation.  But, by entering into a plea agreement in your case, each of you have limited your rights to appeal.

Do you understand that, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino?

NOEL CASTRO TOLENTINO

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Now, Mr. Abraham, do you have any concerns regarding your client's competency?

MR. ABRAHAM:  I do not Your Honor.

THE COURT:  Mr. Velarde, any concerns regarding your client's competency?

MR. VELARDE:  I have none.

THE COURT:  Anything in the Government's file that would raise the issue of competency?

MS. GARDES:  We have no such information, Your Honor.

THE COURT:  Let me start with you, Ms. Tolentino.  Can you please tell me how old you are?

DEFENDANT FLORITA TOLENTINO:  I was born January 22, 1935.

THE COURT:  Are you -- how far did you go in school?

DEFENDANT FLORITA TOLENTINO:  I have a Bachelor of Science in nursing.

THE COURT:  Where did you attend -- get your nursing degree?

DEFENDANT FLORITA TOLENTINO:  In the Philippines.

THE COURT:  Are you married?

DEFENDANT FLORITA TOLENTINO:  Yes.

THE COURT:  Do you have any children?

DEFENDANT FLORITA TOLENTINO:  I have five.

THE COURT:  And how old are they?

David A. Perez, CSR, RPR

NOEL CEPRO TOLENTINO

DEFENDANT FLORITA TOLENTINO:  Starting from my eldest one -- I have to count.  There are five of them.

THE COURT:  Okay.

DEFENDANT FLORITA TOLENTINO:  First child is born 1957.  And then Noel, 1960, the second one.  And then the third one was after five years.

THE COURT:  65.

DEFENDANT FLORITA TOLENTINO:  Yeah.  And the next one was -- I forgot.

THE COURT:  Suffice it to say, however, all of your children are adults.

DEFENDANT FLORITA TOLENTINO:  Yep.

THE COURT:  Are they all here in the United States or different place?

DEFENDANT FLORITA TOLENTINO:  All in the United States, in Texas.

THE COURT:  Okay.  And how about you, Mr. Tolentino, how old are you?

DEFENDANT NOEL TOLENTINO:  47.

THE COURT:  How far did you go in school?

DEFENDANT NOEL TOLENTINO:  I have a Bachelor's in Business Administration and part credits for Master's -- MBA.

THE COURT:  Where did you get your Bachelor's?

THE DEFENDANT:  New York University business school.

THE COURT:  Okay.  And are you married?

David A. Perez, CSR, RPR

DEFENDANT NOEL TOLENTINO:  Yes, I am.

THE COURT:  Do you have any children?

DEFENDANT NOEL TOLENTINO:  I have two.

THE COURT:  How old are they?

DEFENDANT NOEL TOLENTINO:  One is 19, a girl.  And the second one is a boy, 14 years old.

THE COURT:  Where do they live?

DEFENDANT NOEL TOLENTINO:  They live in Houston.  My daughter is in University of Virginia during the year.

THE COURT:  But she is till at home.  She's not married.

DEFENDANT NOEL TOLENTINO:  She's not married.

THE COURT:  Now in just a moment I'm going to have the assistant U.S. Attorney read for me a summary of the evidence in each of your cases.  I assume it will be the same one.  But as she reads the summary that applies to you, I'm going to ask you to listen carefully, because when she's done, I'm going to ask you if there is anything in that summary that you disagree with, that you think is incorrect or inaccurate information.  So I need you to listen carefully to the summary.

Are you going to read the same one?

MS. GARDES:  Both the same.  And because it is rather lengthy, and Court has sat through the trial, if I may summarize the facts?

THE COURT:  That would be fine.  Is it based on the

David A. Perez, CSR, RPR

factual basis attached?

MS. GARDES:  Exactly.  Rather than the read the whole thing, a brief outline of what the Government would show as agreed to in the factual basis attached to the plea agreement.

THE COURT:  So, Ms. Tolentino, Mr. Tolentino, please listen carefully.

DEFENDANT FLORITA TOLENTINO:  I'm sorry?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

MR. ABRAHAM:  Thank you.

THE COURT:  Ready?

MS. GARDES:  In this case, Your Honor, should the matter have proceeded to trial, the Government would show that sometime prior to January 31, 2002, the defendants, through their companies, Omni, which is OmniConsortium, Multicultural Professionals, and Multicultural Education Consultants, came up with the plan to bring Philippine teachers to teach in Texas, on or about January 31, 2002.  The first trip from Brownsville Independent School District concluded with letters of intent to employ 55 teachers being issued.

On March 19, 2002, defendant, Florita Cedro Tolentino, sent a letter to BISD, Brownsville Independent School District, confirming no teachers would leave the Philippines unless and until there was a specific job assignment.

On May 21st, the Board of Trustees met and confirmed hiring of 15 teachers, but a letter dated July 2, 2002,

informed the defendants no jobs for them -- the remaining teachers were guaranteed.

On or about July 8, 2002, the BISD sent a letter to Omni, indicated 16 specific teachers approved and hired, the remainder would not be hired.  Subsequently, three more teachers were, in fact, hired.

On or about July 16, 2002, the defendant, Florita Tolentino, directed staff members at MEC in the Philippines to manufacture contracts for all 54 teachers who were originally given letters of intent to employ.  Between July 22nd and August 1st, defendant, Florita Tolentino, delivered the visa application packets to the United States embassy in Manila in order to secure H1B visas for entry into the United States for all 54 teachers.  Between August 2nd and August 10, 2002, 37 non-hired teachers arrived in the United States utilizing the H1B visa acquired, were met by Noel Cedro Tolentino and brought to El Paso, Texas, which is within the Western District of Texas.

On or about November 24, 2002, a similar trip by Ysleta School District took place where YISD issued 53 letters of intent to teachers.  Subsequently, on January 29, 2003, defendant, Noel Tolentino, wrote to administration at YISD and indicated the language used in their letter of intent needed to be changed because the one used might cause problems at CIS, which is Citizenship and Immigrant Service, a division of the

Department of Homeland Security.

On April 25, 2003, YISD administrators met with both defendants, at which time the defendants were informed that YISD would not be hiring the teachers. At that time Noel Cedro Tolentino gave YISD verbal assurances the teachers would not leave the Philippines without confirmed employment. However, YISD administration continued to sign and complete I-129 petitions in case the teachers would be hired.

Between May 6th and June 10th, staff members at Omni, directed by Noel Tolentino, filed I-129 petitions with CIS for teachers without confirmed employment.

On July 14th YISD administrators sent written cancellation for all but two teachers. After that time defendant, Florita Cedro Tolentino, sent at least nine teachers to the U.S. Embassy in Manila to secure visas and canceled letters of intent. And between July 20, 2003, and August 12, 2003, 44 teachers without employment entered the United States on such visas.

In Socorro, on December 8th and March 16th, Socorro Independent School District administrators took trips to the Philippines, which concluded with 66 letters of intent, between the two trips, being issued. While on the second trip the interim superintendent was fired. On April 16th, the new interim superintendent directed another assistant administrator to inform Noel Tolentino the Philippine teacher program had

been canceled and no teachers would be needed, except for five specific teachers.

On April 25, 2003, defendant sent correspondence to SISD indicating he understood the need to hire local teachers. Despite that, SISD administrators continued to complete I-129s for filing so that the teachers would be ready to come to the United States if circumstances changed. These I-129 petitions were filed between April 24th and June 6, 2003.

After receiving written notification on or about May 14, 2003 that SISD would hire only five specific teachers and no others, defendant, Florita Tolentino, directed MEC staff to create fraudulent employment letters on SISD letterhead for each of the 59 teachers previously given letters of intent by SISD. These fraudulent employment letters were included in packets of information submitted to the United States Embassy in support of the teachers' application for H1B visas.

Between May 29, 2003 and July 29, 2003, SISD teachers applied for and received H1B visas based on these employment letters. Between June 16, 2003 and August 1, 2003, the teachers entered the United States on said visas.

In El Paso Independent School District January 26, 2003, administrators went and issued contracts, not letters of intent. Subsequently, on June 23rd, an EPISD administrator sent Omni written notice canceling three of the alien teachers' contracts. Between July 7, 2003 and July 15, 2003, at the

direction of the defendants, these three alien teachers applied for and received H1B visas based on canceled contracts they entered on August 13, 2003.

Finally, in South San Antonio School District on February 26, 2003, defendant, Noel Tolentino, gave a presentation to the board of trustees in which he indicated there was no application to hire any Filipino teachers, and the 19 petitions needed to be filed in order to bring the alien teachers into the United States to interview for a job.  In April of 2003 South San Antonio issued letters of intent to 21 alien teachers.

Between June 6, 2003 and June 26, 2003, H1B visas were applied for and issued to the 21 teachers based on letters of intent.  On July 28, 2003, the teachers entered the United States on these visas but only two teachers were hired. Defendants, Florita Cedro Tolentino and Noel Cedro Tolentino, now admit they conspired to defraud the United States and its agencies, the Department of Homeland Security and Bureau of Citizenship and Immigrant Services and the Department of State, by failing to tell them the alien teachers did not have confirmed employment.

Those would be the facts.

THE COURT:  All right.  Ms. Tolentino, did you hear everything Ms. Gardes told the Court?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

NOEL CEDRO TOLENTINO

THE COURT:  Is there anything in that summary that you disagree with, that you think is incorrect?

DEFENDANT FLORITA TOLENTINO:  I have some notes about the dates.

MR. ABRAHAM:  May I confer?

THE COURT:  Sure.  While she's reviewing that, Mr. Tolentino, is the summary that Ms. Gardes gave me correct in your case?

DEFENDANT NOEL TOLENTINO:  No, ma'am.

THE COURT:  Okay.

DEFENDANT NOEL TOLENTINO:  I had problems when I read it.

THE COURT:  What do you want to correct?

DEFENDANT NOEL TOLENTINO:  Well, I --

THE COURT:  Do you want to talk about it?

MR. VELARDE:  Go ahead.

DEFENDANT NOEL TOLENTINO:  Okay.  If I'm going to do this, I may make comments on the accuracy of the factual basis. On the second page on -- under Brownsville, Page 11 --

THE COURT:  Okay.

DEFENDANT NOEL TOLENTINO:  May 21, 2002, the BISD board of trustees met and confirmed the hiring of 15 teachers for the district.  That's not true.  They hired 55.  And I believe that prosecutors know that fact.

THE COURT:  So instead of 15 that should say 55.

DEFENDANT NOEL TOLENTINO:  Yes.  All those that went to the Philippines to hire were approved by the board.  That was common knowledge.  People in the office, as well as Nieda Ruth Soto, who could not remember that fact, could not even remember if she was at the meeting.

THE COURT:  We could try the case over again.  Just tell me what you're trying to correct.  So instead of saying 15 it should say 55.

DEFENDANT NOEL TOLENTINO:  Yes.

MR. VELARDE:  Judge, in the interest of, I guess, a better understanding, I would ask the Court to please allow for me to visit with Mr. Tolentino before he proceed into more detail.

THE COURT:  Sure.

(Attorney and client conferring.)

THE COURT:  Ms. Tolentino has conferred.

MR. ABRAHAM:  Basically, Your Honor, the factual basis that has been read to the Court by Ms. Gardes is basically true.

THE COURT:  All right.

MR. ABRAHAM:  There are no corrections we want to make at this juncture.

THE COURT:  All right.  So then as your attorney has indicated, there are no corrections you wish to make to this factual basis; is that correct?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  We will wait for Mr. Tolentino to go through his.

MR. ABRAHAM:  May Ms. Tolentino be seated, Your Honor?

THE COURT:  Sure.  Until we're ready.

MS. GARDES:  Perhaps we could speed this along by clarifying this to the defendant that is what the Government believes it can prove.  That, additionally, and especially in light of the Brownsville, we have a board of trustees member that was at that meeting that would be testifying in this trial, a Pat Leman, who would testify it was 15.  That's where that statement comes from.

THE COURT:  Gotcha.

DEFENDANT NOEL TOLENTINO:  Your Honor, I don't know what procedures are for this kind of --

MR. VELARDE:  Tell the judge.

DEFENDANT NOEL TOLENTINO:  If -- I need to be honest and tell you what my version of the factual basis where I give my comments on this thing.  So, um --

THE COURT:  So you told me about the 55.  What else did you want to correct?

DEFENDANT NOEL TOLENTINO:  That evidence exists, Your Honor, in the vault of BISD that there were 55, anyway.  Ysleta Independent School District, on the second paragraph, just explaining that the letter of intent needed to be changed

because they were recruiting some teachers.  And it needed to be something stronger than a letter of intent because they needed them for the winter term.

The third paragraph, April 25th, I truthfully say that meeting never existed, never occurred.  I was not there.  Martha Dominguez, in the first trial testified that she doesn't remember me being there.  And I have a Visa receipt being in Houston eating at Papasitos on that date.  And --

THE COURT:  So you deny being at this meeting?

DEFENDANT NOEL TOLENTINO:  The fourth paragraph between May 6th and June 10th, staff members at Omni directed by defendant Noel Cedro Tolentino filed -- I have never instructed anybody at Omni to file an I-129 petition in my whole entire life.

THE COURT:  So you deny that paragraph; is that correct?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Go ahead.

DEFENDANT NOEL TOLENTINO:  Socorro Independent School District, third paragraph, April 16, 2003, SISD administrator informed defendant, Noel Cedro Tolentino, that the new interim superintendent canceled Philippine teacher program and no teachers needed -- it's just the first sentence.

THE COURT:  Slow down.  This gentlemen still has to take down what you said --

DEFENDANT NOEL TOLENTINO:  The first sentence of the third paragraph ending with "except for five specific teachers".  Also, that is not true.  We may have had a meeting April 16th, but Mr. Bustamante said to me "I'm going to do the right thing.  And I'm going to -- you know, my job's in jeopardy here.  But we want these teachers.  And in spite of all the politics over here, I'm going to, you know, help these teachers find positions."  That was what he said to me.

He did not tell me about five specific teachers on April 16th.  As a matter of fact, the first time I heard of the five specific teachers was when he visited with the teachers when we were at Holiday Inn and he met with the teachers twice, not once, as he admitted in court.  Twice on the second meeting he said, "I have here a list of five teachers that, you know, we're processing right now."  And he gave me the piece of paper and I read the names.  That is the truth.

THE COURT:  All right.

DEFENDANT NOEL TOLENTINO:  April 25th defendant, Noel Cedro Tolentino, said correspondence to SISD administrator indicating he understood SISD's need to hire local teachers.  He asked me to write that letter, Your Honor.  His job was in jeopardy and he specifically asked me to write what you would call a "CYA" letter, you know.  Because he said "I don't want anybody suing us.  I don't want, you know -- being in trouble because of this." The new administration does not -- did not

like Mr. Aguilar and so-on-and-so-forth.

On the fourth paragraph it says, "After receiving written notification on or about May 14, 2003, that SISD would hire only five specific teachers and no others."  I can say this, that in the first trial, Pablo testified he never saw that letter and we didn't know about it.  On -- the first time we heard about the five teachers was two days after the teachers arrived.  They arrived on June 15th or 16th.  We received a letter from the clerk.  That is the first one to know who's hired on the 18th.

THE COURT:  Let me ask a question, on this one it doesn't talk about you.  It talks about Florita.  My concern is with correction -- I don't know what Ms. Tolentino knew.  And I'm not so sure I'm going to allow you to tell me what she knew.

DEFENDANT NOEL TOLENTINO:  Yes, ma'am, I agree.

Page 13, El Paso Independent School District, on June 23, 2003 EPISD administrator sent Omni written notice canceling three of the alien teachers' contracts.  There were actually five, if I may add, it was at my direction.

She was the first one to call me.  And she said, "Noel -- it was Nancy Evans.  She said, "Noel, I'm not going to need the English teachers.  What do I do?"  And I made a comment and said to Ms. Evans, "Well, you need to write the teachers, for sure write INS, and call Pablo or Rory at the

office.  They will know what to do."

And the second paragraph of El Paso ISD, between July 7th and 15th, at the direction of the defendants, these three alien teachers applied and received H1B visas based on now canceled contracts.  That is absolutely not true for myself.  I actually met with these three alien teachers that were given canceled notices in the Philippines.  We had -- we had what's called a in-service.  It was a big celebration ready to go to the United States of America.

They were informed that they were rejected by El Paso ISD.  They came to me at the end of the day and made their appeal to say, could you call someone, Marcia Brown, changed their mind.  And I said, "I will tell you what, you're on the front of the list for English teachers for next year.  But you're not going this year."

That's what I told those three.  That is the truth.

South San Antonio, first paragraph, second sentence, in that presentation he assured the board there was no obligation to hire the Philippine teachers and the I-129 petitions needed to be filed in order to bring the alien teachers into the United States to interview for a job.  That is a misstatement of what I said.  We have the evidence -- I heard it again.  They always ask, what do we do when we get 20 teachers or ten teachers and maybe one or two are not hired by campus principals because of the way they dress or style?  And

that's when I say, "Give them to me. They're always schools down in the Valley that need math, science and special ed teachers." But no -- I would never say -- and I did not in this particular instance say that just go hire teachers you have no obligation to hire.

So I -- that's a misstatement.

THE COURT: All right.

DEFENDANT NOEL TOLENTINO: Third paragraph, third sentence, on July 28, 2003, the teachers entered the United States on the SSA sponsored visas. Only two teachers were hired by South San Antonio Independent School District. I can only say that I was there myself when I heard Ms. Woodard say "I wish you all arrived a week earlier because all of you would have been hired. And our principals panicked and they just got permanent substitutes." But that's the reason why they hired 20 out of the Philippines and picked up two in the U.S.

It was just -- they were just late. It's not that they didn't want the 20. It's not that -- I mean, why would they write I-129s for 20 if they needed less than that? That's all.

THE COURT: All right. Mr. Tolentino -- and the Court has noted where you have made those clarifications or, in some cases, denials. You understand that you are here to enter a plea to the offense of conspiracy to defraud the United States. I've gone over with you what the elements of the conspiracy

are.  Now, as you know, because we sat through a five week trial, there is much disputed about -- even between different witnesses about the exact dates, the exact facts, et cetera. But in order for this Court to be able to take a plea, I have to make sure you understand that you are pleaing to the offense of conspiracy to defraud the United States.  It doesn't necessarily mean you agree with every ounce of that factual basis.  That's what they believe they can prove if they were to go to trial.  I want to make sure you understand what you're pleaing to.

So with that clarification, is it still your intent to plea to conspiracy to defraud the Government?

DEFENDANT NOEL TOLENTINO:  The plea, Your Honor, is the last paragraph of page 13, which is to say that Noel Tolentino now admits that he defrauded the United States and its agencies by failing to tell them the alien teachers did not have confirmed appointments, I wouldn't disagree with that --

THE COURT:  Let me clarify.  You're not pleaing to the factual basis.  You're pleaing to the indictment, which are the elements I went over with you previously that there had been an agreement to commit the crime of defrauding the Government, that -- parties to that conspiracy, and that some -- one of the conspirators did a positive step to have that overt act alleged in your indictment.  In just a minute I'm going to read the indictment.  You're not pleaing to the factual basis.  You're

pleading to the indictment.

DEFENDANT NOEL TOLENTINO:  I would agree with that then.

THE COURT:  You want to proceed?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  With those clarifications -- because you dispute some of the information in that factual basis?

DEFENDANT NOEL TOLENTINO:  Absolutely.

THE COURT:  All right.  So noted for the record.

Any clarifications from the Government?

MS. GARDES:  For the purposes of the record, it's minor.  But just so there is a record, as I said, Pat Leman, who's a Brownsville board member, would testify in a new trial that only 15 teachers were confirmed on May 21st, 22nd.  Martha Dominguez and Raye Lokey would be testifying to the meeting on or about April 25th, may have been the 24th.  Pablo would testify, in fact, the defendant did direct him to file the Ysleta I-129s.  And that Bustamante would testify that he told Mr. Tolentino that the new interim superintendent canceled the Philippine program.  Elen Nakpil would testify she had a confrontation prior to leaving the Philippines with this defendant, Mr. Tolentino, that he knew she had no employment and to come on down, he would find her a job.  And as far as South San Antonio, what is put in the factual basis is a summary of what was said.

There is a tape and transcript that has been previously entered in the prior trial for any dispute as to what was said.

THE COURT:  So noted, again, for the record.

At this time Ms. Tolentino, Mr. Tolentino, the Court is going to read Count I of your indictment and each of you will need to enter your plea.  So please listen carefully.

The United States of America versus Omni Consortium, Inc., Multicultural Professionals, Multicultural Educational Consultants, Florita Cedro Tolentino, Noel Cedro Tolentino, and Angelica Tolentino, the grand jury charges Count I, beginning on or about July 8, 2002 and continuing to on or about April 28, 2005, in the Western District of Texas, the Southern District of Texas and within the special extraterritorial jurisdiction of the United States, and elsewhere, defendants Omni Consortium, Inc., Multicultural Professionals, Multicultural Educational Consultants, Florita Cedro Tolentino, Noel Cedro Tolentino, and Angelica Tolentino, knowingly, conspired, combined, confederated, and agreed together, and with each other, and with others known, but not indicated herein, and others unknown to the grand jury, to defraud the United States and agencies thereof, to wit, the United States Department of Homeland Security, and the United States Department of State, and to utter and obtain visas, permits, and other documents prescribed by statute and regulation for

entry into and as evidence of authorized stay and employment in the United States, knowing it to have been procured by means of false claim and statement, and otherwise, procured by fraud in, violation of Title 18 United States Code, Section 1546.

To this offense, how did you wish to plea Ms. Tolentino?

MR. VELARDE:  We weren't pleading guilty -- not to the 1546 --

THE COURT:  Just to the first part.  All right.

MR. VELARDE:  371.  We took an abundance of caution to eliminate -- because it does not exist.  Any mention of visa fraud or alien smuggling.  And what is reflected in the last paragraph --

THE COURT:  It's a portion of Count I.

MR. VELARDE:  That is correct, a portion.

MS. GARDES:  That's correct.  It's a multi-object conspiracy.  They are pleading to one object, but not the other.  And I believe it is object one of the conspiracy.

THE COURT:  Okay.  So let me go through it again, just to defraud the United States.

United States of America versus Omni Consortium Inc., Multicultural Professionals, Multicultural Educational Consultants, Florita Cedro Tolentino, and Noel Cedro Tolentino, and Angelica Tolentino, the grand jury charges, Count I, that on or about -- I'm sorry.  Beginning on or about July 8, 2002

and continuing to on or about April 28, 2005, in the Western District of Texas, the Southern District of Texas, and within the special extraterritorial jurisdiction of the United States, and elsewhere, defendants, Omni Consortium, Inc., Multicultural Professionals, Multicultural Educational Consultants, Florita Cedro Tolentino, Noel Cedro Tolentino, and Angelica Tolentino, knowingly conspired, combined, confederated, and agreed together, and with each other, and with others known, but not indicted herein, and others unknown to the grand jury to defraud the United States and agencies thereof, to wit, the United States Department of Homeland Security, and the United States Department of State.

To that violation, how did you wish to plea, Ms. Tolentino?

DEFENDANT FLORITA TOLENTINO:  Guilty, I plead guilty.

THE COURT:  And, Mr. Tolentino?

DEFENDANT NOEL TOLENTINO:  I plead guilty.

THE COURT:  All right.  Ms. Tolentino, Mr. Noel Tolentino, then based on the provided summary of the evidence, and your individual pleas, the Court is going to make the following findings:  The Court is going to find that each of you are fully competent and capable of entering an informed plea here this afternoon.  The Court is going to find that each of you are aware of the nature of the charges against you and the consequences of that plea.  The Court is going to find that

your individual pleas are knowing and voluntary pleas, supported by an independent basis in fact that contains each and every essential element of the offense.

I will accept your plea of guilty. I will find you each guilty of the offense to which the plea of guilty was entered and enter a judgment of guilty in each of your cases. As I said before, you will come back for sentencing. A probation officer has been assigned. And that probation officer will be preparing a report.

Before sentencing it is important that you go over that report with your attorney. And if there's anything in that report that you disagree with, that you think is incorrect or inaccurate information, you need to let your attorney know that so that he can file the appropriate paperwork with me and let me know that. I want you to know in order to prepare the report, its likely your probation officer will want to interview you.

At that interview you are absolutely entitled to have your attorney with you. If you would like your attorney there with you, let him know that, let your probation officer know that so that they can coordinate a time. The only other thing I want to clarify before we end this plea is that as part of that plea, you have agreed to forfeit certain items that were listed.

Ms. Gardes, do you want to go over those items?

David A. Perez, CSR, RPR

MS. GARDES:  Your Honor, at this time the Government has the following assets in its possession to which we are seeking forfeiture.  That is, a Wells Fargo Bank account including any and all accumulated interests from the date of seizure.  The account number ends in 5604.

Actually, it has a zero balance.  It was seized though.  BankOne account and any and all accumulated interest, which as of last week was $15,193.23.  The last four digits is 4406.

Bank of America account, any and all accumulated interest, which of last week was approximately $6,963.69.  The last four digits on that account are 9242.

A Bank of America account, and any and all accumulated interest, which is approximately $30,056.34.  The last four digits 2764.

A United Central Bank account, and any and all accumulated interest of, approximately, $33.96.  The last four digits, 6392.  And the net proceeds and interest therefrom on the interlocutory sale, which the Court previously had ordered of real report located at 708 Kuhlman Houston, Texas.  The net proceeds are, approximately, $202,873.94, after paying off all tax liens and all back mortgage payments due and owing at the time of the sale.

Those would be the assets the Government will forfeit.

THE COURT:  You understand that's part of your plea

agreement?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And you acknowledge that at this time?

DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

THE COURT:  And, Mr. Tolentino, you agree that's part of your agreement?

DEFENDANT NOEL TOLENTINO:  Yes, I do.

THE COURT:  And you acknowledge it?

DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

THE COURT:  Anything further on behalf of the Government as to these two cases?

MS. GARDES:  No, Your Honor.

THE COURT:  Anything, Mr. Abraham?

MR. ABRAHAM:  No, Your Honor.

THE COURT:  Mr. Velarde?

MR. VELARDE:  No, Your Honor.

THE COURT:  Your sentencing date then is March 19th, 9:00 in the morning for both.

MR. ISLAS:  Your Honor, Luis Islas, who's here with Angelica Tolentino.  I have been given, by Ms. Gardes, a petition to adjudicate interest in property and consent to final criminal forfeiture for my client, Angelica Tolentino, to sign.  There is one paragraph that I requested Ms. Gardes to remove from the petition.  But I thought it prudent if I would stand here right now and assure the Court that my client has

agreed not to contest the forfeiture of those assets that were set forth by Ms. Gardes just a few minutes ago at this plea.  I wanted to state that for the record.

THE COURT:  Does she have any problem with acknowledging that on the record?  Then she can sign the report.

DEFENDANT ANGELICA TOLENTINO:  Your Honor, your question?

THE COURT:  Do you have any problems with just acknowledging that on the record, saying --

DEFENDANT ANGELICA TOLENTINO:  I acknowledge that -- what he said.

THE COURT:  All right.  So noted on the record.

Let me ask Ms. Gardes because we have the jury being notified tonight whether or not they need to come in for Friday.  Where does that put it including for the record, would you let me know what then is the intent of the --

MS. GARDES:  The Government would move for a continuance on the case of Ms. Angelica Tolentino as the case is going to be dismissed at the time of sentencing against her under the terms of the plea agreement.

THE COURT:  Okay.

MS. GARDES:  As for the corporate defendants, those summonses are still sitting at the Texas Department of State.  So, I guess, to be on the safe side, we would be dismissing,

move for a continuance until March 19th.

THE COURT:  So it would be your intention then to dismiss as to all the --

MS. GARDES:  Remaining defendants.

THE COURT:  Except for these two.  And you would move for dismissals at the time of sentencing.  But you're asking for continuances?

MS. GARDES:  That's correct, Your Honor.

THE COURT:  Mr. Islas, this is your client's speedy trial right.  I need to make sure you're in agreement with that continuance.

MR. ISLAS:  I don't object to the direction we're going.  I would have to be crazy.  I have been known to be crazy, but not this time.

THE COURT:  Based on that, the Court will grant the continuance as to Angelica Tolentino, and the other defendants pending the agreement.  And as I've said to you both, should the Court not follow the plea agreement, then I will allow you to withdraw.

MS. GARDES:  With speedy trial waived as between now and March 19th.

THE COURT:  That's correct.  That's indicative by his agreement.

MR. VELARDE:  Thank you.

THE COURT:  Let me say to everyone, I know this has

David A. Perez, CSR, RPR

been a hotly contested case for many.  I appreciate all of your hard work in this case.  And I want to say I know many of you spent the entire vacation trying to get this resolved.  I appreciate all the hard work.

(Recess.)

* * * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.  I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.


Signature:/s/_____ Date:  March 14, 2008
        David A. Perez, CSR, RPR

David A. Perez, CSR, RPR